In the United States District Court
For the Western District of Michigan

Benjamin Caulton, 246805
Jabar Evans, 250493
Benjamin Carter, 666113

(Enter above the full names of all plaintiffs, including prisoner number,

Case: 2:16-cv-13163
Judge: Cox, Sean F.
MJ: Majzoub, Mona K.
Filed: 08-31-2016 At 09:03 AM
PR CAULTON, ET AL VS. SNYDER (DP)

v. Governor Rick Snyder - Official
x Individual Capacities

(Enter above the full name of the defendant or defendants in this action.)

## COMPLAINT

I.  **Previous Lawsuits**

**CAUTION: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in this and other federal courts without prepayment of the required $350 filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding in forma pauperis and require you to pay the entire $350 filing fee regardless whether your complaint is dismissed.**

A.  Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility?   Yes ☑ No ☐

B.  If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

1.  Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.

U.S. District Court (western) (Caulton, 246805)

2.  Is the action still pending?   Yes ☑ No ☐

a.  If your answer was no, state precisely how the action was resolved: _____

_____

3.  Did you appeal the decision?   Yes ☑ No ☐

4.  Is the appeal still pending?   Yes ☑ No ☐

a.  If not pending, what was the decision on appeal? _____

_____

5.  Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit?   Yes ☐   No ☑

If so, explain: _____

_____

II.  **Place of Present Confinement**  Cooper Street Correctional Facility

If the place of present confinement is not the place you were confined when occurrence that is subject of instant lawsuit arose, also list the place you were confined: _____

POOR QUALITY ORIGINALS

III.    **Parties**

A.    Plaintiff(s)

Place your name in the first blank and your present address in the second blank. Provide the same information for any additional plaintiffs. Attach extra sheets as necessary.

Name of Plaintiff Caulton, 246805, Evans, 250493, & Carter, 666113

Address 3100 Cooper Street, Jackson, MI. 49201

B.    Defendant(s)

Complete the information requested below for each defendant in this action, including whether you are suing each defendant in an official and/or personal capacity. If there are more than four defendants, provide the same information for each additional defendant. Attach extra sheets as necessary.

Name of Defendant #1 Rick Snyder

Position or Title Governor

Place of Employment Governor's Office (Michigan)

Address P.O. Box 30013, Lansing, Michigan 48909

Official and/or personal capacity? _____

Name of Defendant #2 _____

Position or Title _____

Place of Employment _____

Address _____

Official and/or personal capacity? _____

Name of Defendant #3 _____

Position or Title _____

Place of Employment _____

Address _____

Official and/or personal capacity? _____

Name of Defendant #4 _____

Position or Title _____

Place of Employment _____

Address _____

Official and/or personal capacity? _____

Name of Defendant #5 _____

Position or Title _____

Place of Employment _____

Address _____

Official and/or personal capacity? _____

IV.    **Statement of Claim**

State here, as briefly as possible, the facts of your case. Describe how each defendant is personally involved. Include also, the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.

Governor Rick Snyder review, sign and control the laws, courts and MDOC and, the three Plaintiffs listed are Challenging Wheather Michigan Criminal Sexual Conduct law is Unconstitutional to where all a Victim have to Claim (male or female) is that a defendant Sexually assaulted He or She, regardless of a doctor's finding, the prosecution is still rewarded a Conviction. (See Exhibit B)

2. Michigan's Criminal Sexual Conduct law clearly takes away the Burden of Proof from the Prosecution in Violation of the Michigan as well as the U.S. Constitutional, as well as allow a Victim to Change their Story as many times as necessary to obtain a Conviction. (Exhibit-C)

3. Michigan CSC law allow the Court to disregard Double Jeopardy and a jurisdictional defect as Exhibit A Show where Benjamin Caulton, 246805 received a Direct Verdict, but is still during 8- to 80 years for CSC III along with and Habitual 4 Sentence, and never seeing the Parole Board after 21 yrs. of Confinement. (Exhibit-A)

(Last Revised: February 2009)

V.    **Relief**

State briefly and precisely what you want the court to do for you.

Because of the Violation of each Plaintiff
Constitutional Right we are requesting this
Court to grant immediate release along
with Payment of Five (5) Million Dollars
to each Plaintiff, IF not grant us a
jury trial to Prove our Claim.

8-22-16
Date

Benjamion Caulton, 246805
Signature of Plaintiff
Jabari Evans # 250493
Benjamin Carter # 666113

**NOTICE TO PLAINTIFF(S)**

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

-4-

(Last Revised: February 2009)

EXHIBIT - A

EXHIBIT – A

| STATE OF MICHIGAN<br>COUNTY OF MACOMB<br>CIRCUIT COURT | PETITION FOR<br>APPOINTMENT OF<br>COUNSEL (FELONY) | Dist. Ct. No:  _96-1002_<br>Cir. Court No:<br>Judicial Aide Acct: |
|---|---|---|

**PEOPLE OF THE STATE OF MICHIGAN**

v   _BENJAMIN CAULTON_

### THIS SECTION TO BE COMPLETED BY COURT/JAIL PERSONNEL

Alias(es) or AKA   _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_   •   Co-defendant(s)   _12,18,51_
Birth date

Driver's license/ ID number

Charge(s) and statute number(s)   _CSC 1ST DEGREE (PERS. INJ)   750.520B1F_

Bond Information: $ _25,000.   C/S ONLY_
Amount Set   Personal, cash, surety, 10%   Posted by

Exam:  Date _7-30-96_ at  Time _1:30 PM_   Judge _FOSTER_   Court _41B_

### THIS SECTION TO BE COMPLETED BY OR FOR DEFENDANT

Address (Street) _17311 Kingsbrooke Circle #203_   City _Clinton Twp_   State _I_   Zip Code _48038_

Your phone number _(810)228-0384_   Present employer _None (Prisoner)_   Employer's phone _(   )_

$ _____   $ _____
Weekly take-home pay   Your Bank   Other income

Things you own and their value

Debts which you must pay (describe type of debt).

   I request the appointment of assigned counsel for the defense of my pending criminal matter.  I am indigent and have no means with which to secure counsel myself.  I authorize the courts and the Judicial Aide Department to verify this information and obtain any other information regarding my financial condition and employment they desire in their sole discretion.  I give the Judicial Aide and its agents permission to contact any credit reporting agency and review any credit report from any credit reporting agency.  **I agree to reimburse the County of Macomb all monies expended on my behalf for attorney and defense costs in this matter**; and, if I am unable to repay those attorney fees and defense costs in full, I will enter into a reimbursement payment plan at a rate in accordance with my ability to pay.  I understand that any bond posted in my name may be applied to victim restitution, court costs, attorney fees and defense costs, before the balance, if any, is returned.  I also understand that jail inmate funds may be applied to defense costs. I understand that MCL 600.4801 and MCL 600.4803 provide for imposition of a 20% late fee for any amounts due and owing if not paid within 56 days of the due date.

**VERIFICATION UNDER MCR 2.114:**    I declare that I have read and understand all statements written above and that all information provided is true to the best of my information, knowledge and belief.

_Benjamin Caulton_   _7-16-96_
Signature of defendant   Date

FORM JA 003 4/1/96   Original-File;  Yellow-Defendant;  Fax to Judicial Aide (810) 469-5430

MICHIGAN DEPARTMENT OF CORRECTIONS

CSX-117
Rev 09/01

# BASIC INFORMATION SHEET

| Message Updated Emergency Contact Info 7/24/13 MH/TCF | Date Received 12/08/1995 |
|---|---|

| Client Number A-246805 | Client Name Caulton, Benjamin | Commit Status R-04 | Commitment Reason New Commitment - Probationer w/ New Sentence (Rec Ctr. Only) | Curr Loc TCF |
|---|---|---|---|---|

| FBI Number 450547H | SID Number 1676771J | SSN 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 | Birthdate 12/18/1951 | Race B | Sex M | Height 6' 1'' | Weight 160 | Hair BRN | Eyes BRN | Complexion MED | Build MED | Marital N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Adult Jail Term 2 | Adult Prison 0 | Adult Escapes 0 | Adult Probation 0 | Sex Offense 2 | Juv. Commits 0 | Juv. Probation 0 | Juv. Escapes 0 |
|---|---|---|---|---|---|---|---|

| Religion Q | Health Insurance N | Military Code | Marks, Scars Tattoo, Chest | More More |
|---|---|---|---|---|

| Sentence Rec No | Docket Number | Sentencing County | Judges Name | Offense Date | Sentence Date | Jail Credit Days | Corrected Date |
|---|---|---|---|---|---|---|---|
| 4 | 962198FC | Macomb | Bucci | 11/14/95 | 05/13/97 | 0 | 05/13/97 |
| 3 | 940915801 | Wayne | | 08/09/94 | 09/21/95 | 89 | 06/24/95 |

| Sentence Rec No | Terms | Offense Description | Compiled Law | Convict By | CTN Number |
|---|---|---|---|---|---|
| 4 | 8y to 20y | CSC 3rd (Hab Crim 4th Off.) | 750.520D1B | J | 509600359701 |
| 3 | 20y to 60y | CSC 1st-Personal Inj | 750.520B1F | C | 829441827101 |

| Sentence Rec No | Calendar Date | SGT/PMI/TIS/CAL | | RGT/AMI/TIS/CAL | | SGT/PMX | | RGT/AMX | |
|---|---|---|---|---|---|---|---|---|---|
| 4 | 03/05/2021 | PMI | 09/06/2019 | AMI | 03/05/2021 | PMX | 12/18/2061 | AMX | 09/13/2065 |
| 3 | 03/05/2021 | PMI | 09/06/2019 | AMI | 03/05/2021 | PMX | 12/18/2061 | AMX | 09/13/2065 |

| PAROLE ELIGIBILITY DATE: |
|---|

### PREVIOUS SENTENCE INFORMATION

| Client Prefix | Rec No | Sentence Date | Terms | Offense Description | SGT Max Date | RGT Max Date | Term/Disch Date |
|---|---|---|---|---|---|---|---|
| A | 2 | 09/28/95 | 1y-2y | Retail Fraud-1st Deg, 750.356C | | | 01/01/97 |
| A | 1 | 09/28/95 | 1y-2y | Retail Fraud-1st Deg, 750.356C | | | 01/01/97 |

### IN CASE OF SERIOUS ILLNESS OR INJURY CONTACT

| Relationship | Name SHELLEY MERRITT | Address 3323 FOREST WOOD DR. |
|---|---|---|
| City & State SUWANEE GA | | Telephone (770) 622-1063 |

Page 1 of 1

07/24/2013 10:14:04
A-246805 Caulton, Benjamin

DISTRIBUTION: White - Record Office, Canary - Central Office Records, Pink - Counselor, Goldenrod - Prisoner

MR. REDSTONE:  That's all I have.

MR. PORTUESI:  No questions.

THE COURT:  Okay, you are excused, Doctor.

(Whereupon the witness was excused).

MR. REDSTONE:  Your Honor, I have a motion to make.

THE COURT:  Take the jury out.

MR. REDSTONE:  I would move for a motion for directed verdict of acquittal.   I believe this is a one-count information; is that right?

MR. PORTUESI:  Yes.

MR. REDSTONE:  I would move for a directed verdict of acquittal based on my position that no reasonable trier of fact, taking the evidence in the light even most favorable to the prosecution, can find beyond a reasonable doubt that my client is guilty of the offense.  It is really preposterous when you think about the complainant's testimony.

He testified he was having flashbacks about things that he doesn't remember.   He was testifying that he let some seven or eight hours go by before the went to the authorities in the jail to complain about this.

He's also testified that when he woke up he was bleeding from the rectum, pulled the underwear back up and wore them another four or five hours.   The no blood was in the underwear.

I think that if the Court looks at the testimony of the complaint as a whole, I think it is so unreliable and so incredible that no

202

FORM SMI-25 PENGAD/INDY 1-800-631-6969

1  reasonable trier of fact could convict on it, and for that reason I would ask
for a directed verdict of acquittal.

2

3         MR. PORTUESI:   In response, I know the Court is
familiar with the standards to be applied in this type of motion.  This is
4  evidence that must be taken in the light and most favorable to the
5  prosecution, and I think with the personal injuries that has been shown in
6  this case, and I would refer the Court to four cases that I have just been
7  looking at and I have some more in my trial manual, People vs Kraig, K-r-a-
8  i-g, which is a 1979 case for the establishment of personal injuries does not
9  necessarily have to be permanent or substantial; the next case, People vs
10  Baker, 153 Mich. App., --
11

12         THE COURT:  Is the injury required to cause the
13  penetration for sufficient personal injury?

14         MR. PORTUESI:   I am sorry.   Run that by me again?

15         THE COURT:  Is the injury -- the physical disturbance
16  of the body that causes the penetration?  You are not arguing that such an
17  injury, are you?

18

19         MR. PORTUESI:   Could be according to these four
20  cases, Judge, if I could just continue with them.

21         THE COURT:  Okay.  Go ahead.

22         MR. PORTUESI:   In the next case, People vs Baker,
23  103 Mich. App., 25, a 1978 case with reference to personal injury to
24  support a CSC one conviction  where the victim has a sore neck was upset,
25  does not return to work for some time, and took up another job; People vs.
Reese, 110 Mich. App. 644, a 1982 case, personal injury established,

FORM SMI-25 PENGAD/INDY 1-800-631-6989

203

shown by the complainant and a struggle with the defendant afterwards was very scared, and then People vs Kiczen, K-i-c-z-e-n, 116 Michigan Appeals, 341, a 1982 case, personal injury established by showing the victim suffered scratches and bruises after the attack was disturbed because of screaming, the victim cried and was visibly shaken.

Judge, if you put those four cases together, I think, clearly, you have got a personal injury.   You have got scratches, you have got abrasions and you have got in fact something where the victim was able to show to this court and to the jury a scratch or bruise on the right hand.

You've got soreness to the anus which is similar to the Baker case where it is established that soreness was to the neck, was upset and then there is also the fact that in the Reese case where it is indicated that the victim struggled with the defendant, that was taken into account.   That was probably the most lowest threshold of all these cases where it says the defendant, the victim struggled with the defendant and afterwards was sore and disturbed.

I think it has been established that the victim said he was sore, said he was scared, locked himself in his room later and was afraid of the defendant getting next to him and when the defendant is being taken out of the pod as a result, the victim told the deputies of this incident, and besides we do have the element of mental anguish, which also rises to the personal injury to satisfy the statue, for some of the things that the jury have to consider in establishing mental anguish, whether the victim suffered mental anguish and whether there was an interference with the victim's ability to work or lead a normal life, and I believe the testimony

204

establishes that the victim testified that he had problems -- he has had

problems and he is disturbed as a result of the incident, and he has

flashbacks about the incident.

I believe his testimony was that he was very

disturbed and having disturbances in his sleep for the first couple of

months after this happened.   Did he feel angry or humiliated?   I think

there is testimony presented that he was embarrassed about this incident,

although arguably he was embarrassed about the physical exam he was

going through.   Was he emotional upset after the incident?   Did he feel

scared afterwards about the possibility of being attacked again?  Again, I

think that goes to the evidence that he was scared or perhaps petrified of

being sexually attack, but also physically attacked by Ben Caulton, and I

think when you combine those elements of mental anguish along with the

case law that has been established in the other CSC first degree cases, it

can be a physical injury.

I believe we have established at least in the late

months that I have been in the prosecution of this case, that the elements

have been established for CSC, and I ask you not to deny the motion for

directed verdict.

THE COURT:  You want to respond?

MR. REDSTONE:   Well, I just want to say that what

has been physical injuries and scratches and abrasions is so de minimus.

At any rate, the doctor or nurses didn't say it was a flesh wound, it was a

mark there.   I think that kind of injury is so minor that it should be

insufficient to raise a third degree to first degree.

FORM SMI-25 PENGADINDY 1-800-631-6989

With respect to the mental anguish nothing like that has been substantiated and that is the doctor and nurse didn't say it appeared to be any mental anguish and there is no evidence he sought counseling and he says he was having flashbacks, he didn't remember the penetration and may be he is having flashbacks about being in jail. I think that it is.

I think the flashbacks about the jail visits, and we don't know whether he is having mental problems, and I think it is very speculative on the part of the prosecution to suggest such a thing in his argument in that it has not been established by any degree of sufficiency to take it to the jury.

THE COURT: Okay. The defendant is charged with criminal sexual conduct in the first degree.

In order to establish criminal sexual conduct in the first degree, the People must prove that the defendant engaged in sexual penetration with Mark Doan, the complaining witness in this case, and one of any number of other circumstances which exist. The charge is based upon the statute -- statutory factors which interplay in charge. The factor of the two is that the injury that is the sexual penetration, was as a result of force or coercion, and it resulted in personal injury.

Personal injury is defined as a bodily injury disfigurement, chronic pain, pregnancy, disease, loss of impairment of sexual or reproductive organs or mental anguish.

1    Mental anguish has been defined as extreme pain,

2 extreme stress or extreme suffering either at the time of the event or later

as a result of it.

3    In the case of People vs Petroli, 320 Michigan 221, a

4 1995 case, the Michigan Supreme Court set forth a list of non-exclusive

5 factors which are relevant to determining whether mental anguish existed,

6 and mental anguish is defined, as I have already read from the instructions,

7 and extreme or excruciating pain, distress or suffering of the mind at the

8 time the event occurred as a result of it.

9

10    The non-exhaustive list in the Petroli case has been

11 incorporated into criminal jury instructions 20.9, which defines force,

12 coercion, and physical injury and mental anguish, and the complainant here

13 has testified that although he had been diagnosed as manic depressive,

14 had not been on medication for some period of time prior to this alleged

15 incident having occurred.

16    He said how it has affected him.  He said he had

17 had sleepless nights and had his sleep interrupted and I guess the right

18 name is insomnia, and that he had flashbacks.  He said that he felt scared

19 afterwards about the possibility of being attacked again, which is why he

20 didn't report the incident, but waited until he felt it was a more opportune

21 time to do so, and the complaining witness testified that he told the

22 defendant that he would not report it and he said that was an attempt to --

23 on his part to lull the defendant into leaving him alone or give him some

24 sense of security, so that he would not be put in jeopardy.

25

FORM SMI-25 PENGAD/INDY 1-800-631-6989

1          he testified that he perhaps was upset about it, and I
2     believe he said he shifted all night and he put himself in a curl and this is
3     called the fetal position.   Whether he felt he was humiliated or not, the
4     only question of any embarrassment came from the nurse Johnson, she
5     testified that she couldn't tell if he was embarrassed or not, but obviously
6     he was from it is alleged that occurred to him in the examination that he
7     underwent when he went to the hospital.
8          He said this incident that -- this insomnia lasted for a
9     period of time, although not for an extremely long period of time, and he
10    said the flashbacks continued, and there is no evidence that he sought any
11    psychological treatment, but there is some evidence that he received a
12    small scratch on the back of his hand, that occurred as a result of the
13    altercation that he has testified to, and this is described as a small wound
14    on the abdomen that was found by the doctor after first being found by the
15    nurse apparently as a result of the forced coercion and that means that this
16    defendant either used physical force or did something to make the
17    complainant reasonably afraid of present or future danger.
18          There was some testimony that the parties argued
19    and fought.   If that is believed, the testimony that the complainant slapped
20    him about his face, that he was put in a choke hold and loss
21    consciousness.  I believe that is sufficient testimony for coercion.
22          The factors regarding the mental anguish are skimpy,
23    very skimpy.   However, there is enough evidence that we -- that would
24    create a question of fact that there was sexual intercourse here, rectal
25    intercourse.   The defendant -- strike that.

208

The complaining witness testified that he found his clothing below his knees when he woke up and felt soreness in the anus; that soreness is evidenced by the redness of the anal opening, and tenderness to touch upon examination by the doctor. Doctor Weeks was not able to testify as to whether that was caused by another way or not when he examined him and that tenderness, redness did not exclude any other source.

He said that is a possibility. There is no testimony that this individual complained of having problems of passing stool or any other physical problems which would attribute that condition.

The only semen that was found was in the underwear of the complainant in the rear of the underwear in the back, found a fecal stain. The blood typing of that semen is A blood typing which includes the blood type of the defendant, but it includes 38 or 39 percent of the male population that is that type of secretor. The indication is in the case of People vs Hampton, I believe one of the leading cases in this area with respect to the standards I have to apply on a motion for directed verdict, and that case tells me that in ruling on a motion sufficient as this presented to me the motion for directed verdict of acquittal, I must consider the evidence presented by the prosecution up to the time the motion was made and viewed in the light most favorable to it. In determining whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt, I think from the record presented the trier of fact in this case could find the elements of a criminal sexual conduct in the first degree beyond a reasonable doubt.

209

FORM SM/25 PENGAD/INDY 1-800-631-6989

What troubles me about this case is that the

1      evidence of mental anguish and injury is so absolute and third degree

2      criminal sexual conduct being a lesser included offense is a necessary

3      included offense of criminal sexual conduct in the first degree.

4      What concerns me is the same thing that concerned

5      Judge Colombo in his dissent in People vs Spiral, 202 Michigan Appeals

6      719, a 1993 case that there being a lesser included offense give the sense

7      to the prosecutor's charge of allowing the prosecutor to avoid the

8      appropriate factors a little different in that case.  It was a CSC case with

9      four separate counts of aggravated circumstances.

10     The Court of Appeals there found that there was -- it

11     was not reversal error to not give the lesser included instruction.

12

13     Judge Colombo's dissent talked about the particular

14     charges in that case, but goes on to the concern when you have a

15     necessary included offense with such sparse evidence as you have here,

16     the allegations of mental anguish and physical injury that it does give

17     sanctions by having necessary included offenses to the prosecutor's

18     charge, and the People vs Hampton case tells me not that there is evidence

19     from which a rational trier of fact could find that certain facts exists, but I

20     have the burden of looking at that and making a determination of whether a

21     rational trier of fact could find from the evidence, taking it in the light most

22     favorable to the prosecutor, that those -- I am going to cite the language

23     from Hampton, could find the essential elements of the crime were proved

24     beyond a reasonable doubt.   In this case, I don't believe that I could, in

25     good conscience, look at the evidence of mental anguish and physical

FORM SM-25 PENGAD INDY 1-800-631-6989

injury and apply that to the Hampton standards.   Now, if this case goes to

1   the jury on first degree CSC, I will grant the motion to direct a verdict that

2   that CSC 1 and let that go to the jury on CSC 3.

3                    MR. PORTUESI:  Thank you, Judge.

4                    MR. REDSTONE:   Thank you, Your Honor.

5           THE COURT:  Okay.

6                    MR. PORTUESI:   May object to the Court's ruling?

7           THE COURT:  Sure, you can protect your record.

8                    MR. PORTUESI:   Thank you.

9                    MR. REDSTONE:   I can rest in front of the jury, and

10  there is a matter of Mr. Caulton's testimony.

11

12                   THE COURT:  Do that right now so you can rest in

13  front of the jury.

14                   Mr. Caulton, raise your right hand.

15   B E N J A M I N     C O U L T O N

16  The defendant herein being first duly sworn testified on his oath as

17  follows:

18                                                              DIRECT EXAMINATION

19  BY MR. REDSTONE:

20  Q    What is your full name?

21  A    Ben Caulton.

22                   THE COURT:  C-a-u-l-t-o-n?

23  A    C-a-u-l-t-o-n.

24  Q    (By Mr. Redstone, continuing):   We have had discussions about your right

25   to testify on your own behalf in this case; is that right?

THE COURT:  Let the record indicate that counsel

1  and the defendant have been -- is having a conference.

2  (Whereupon there was a short pause in the

3  proceedings).

4  THE COURT:  Mr. Caulton --

5  A   Yes.

6  THE COURT:  Then you have had an opportunity to

7  discuss with Mr. Redstone your rights?

8  A   Yes, I have.

9

10  THE COURT:  Okay.   Can you tell us what your

11  decision is, sir?

12  A   I have chosen not to testify, sir.

13  THE COURT:  Okay.  I find from the record made that

14  the defendant's indication is that he understands his rights and that his

15  choice has been knowingly, understandingly and voluntarily made.  Okay.

16  MR. REDSTONE:   Thank you, Your Honor.

17  THE COURT:  We are called the -- we are going to

18  call the jury and then be prepared to do your closing and I will instruct them

19  tomorrow morning.

20  MR. PORTUESI:   Will you be instructing the jury that

21  in fact that criminal sexual conduct in the first degree has been taken from

22  them as an option, and they will be only deliberating on criminal sexual

23  conduct in the third degree?

24

25  THE COURT:  Before you begin your closing

arguments.

FORM SMI-25 PENGAD/INDY 1-800-631-6989

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

THE PEOPLE OF THE STATE OF MICHIGAN )
)
vs. )        96--2198--FC
)
BENJAMIN CAULTON, )         SENTENCE
)
Defendant. )

Proceedings had and testimony taken in the above entitled matter before the Honorable LIDO V. BUCCI, Circuit Judge, at Mount Clemens, Michigan, on May 12, 1997.

APPEARANCES:

> CARL MARLINGA, Prosecuting Attorney.
> BY: DAVID PORTUESI, Esq.,
> Assistant Prosecuting Attorney.
>
> Appearing on behalf of the People.
>
> DAVID REDSTONE, Esq.,
>
> Appearing on behalf of the Defendant.

2

THE CLERK:  The People vs. Benjamin Caulton.

MR. PORTUESI:  May it please the Court, David Portuesi appearing on behalf of the Prosecutor's Orrice.

This is the case of the People of the State of Michigan vs. Benjamin Caulton, Criminal File Number 96--2198--FC

MR. REDSTONE: My name is David Redstone and I am appearing on behalf of Mr. Caulton.

We are here for sentencing.  I have reviewed the pre-sentence report with my client.  He is satisfied with the contents.

The guidelines appear to be correct.

THE COURT:  The defendant was convicted by a jury trial.  The defendant was convicted of the charge of Criminal Sexual Conduct in the Third Degree.  We are here now for the purpose of sentence.  Could I have the file?

Mr. Caulton, you are charged as a Habitual Fourth and I need to ask you whether you acknowledge the validity of the convictions.

The Prosecutor alleges that you were convicted on September the 28th, 1995 of the offense of Retail Fraud First Degree in the Macomb County Circuit

1 Court. That is a felony.

2       Were you convicted of that offense?

3     MR. CAULTON: I pleaded guilty to it.

4      THE COURT: You were convicted by

5 your plea.

6     MR. CAULTON: Yes.

7      THE COURT: On September 28th, 1995 that

8 you were convicted of Second offense of Retail Fraud in

9 the First Degree in Macomb County Circuit Court.

10     MR. CAULTON: Not that one. I pleaded

11 guilty to it.

12     THE COURT: You were convicted. You

13 pled guilty to it, then, correct?

14     MR. CAULTON: Yes.

15     THE COURT: And you were convicted by

16 your plea of guilty. Those are convictions.

17     MR. CAULTON: The same date that you

18 just called out.

19     THE COURT: Two of them on September

20 the 28th, 1995?

21     MR. CAULTON: I pled guilty to both

22 of them.

23     THE COURT: And those -- that's -- they

24 are both felonies.

25     On September 21st, 1995, you were convict-

1   ed of Criminal Sexual Conduct First Degree in Recorder's

2   Court for the City of Detroit.  Were you convicted of

3   that offense?  That is also a felony?

4              MR. CAULTON:  I was sentenced on that

5   date.  I was convicted on July the 26th, '95.

6              THE COURT:  You were convicted of that

7   crime, correct?

8              MR. CAULTON:  Yes.

9              THE COURT:  And you were sentenced in

10  September '95.  You said you were convicted in July.

11  July the 26th, 1996, '95?

12             MR. CAULTON:  Yes.

13             THE COURT:  On or about March 18th,

14  1993 the Prosecutor alleges that you were convicted of

15  Retail Fraud First Degree in the Oakland County Circuit

16  Court.  Did you plead guilty of that offense or were you

17  convicted by a trial?

18             MR. CAULTON:  I remember having pro-

19  bation out of Oakland County, but I don't remember the

20  exact date.

21             THE COURT: But were you convicted of

22  Retail Fraud?

23             MR. CAULTON:  I pled to it.

24             THE COURT: Do you acknowledge validity

25  of these cour convictions?

MR. CAULTON:  I acknowledge them, yes.

THE COURT:  Okay.  Mr. Prosecutor, I am going to allow you to amend the Habitual Information to allege the correct date of the conviction on the CSC First on the record at Recorder's Court.

MR. PORTUESI:  Judge, I have to have a certified record of that conviction.

The defendant was in Court for sentence on September the 15th, 1995 and September the 21st, 1995.

He was sentenced to 20 years.

THE COURT: The conviction date?

MR. REDSTONE: That was the date they entered judgment.

MR. PORTUESI: That was the date they entered the conviction.

THE COURT:Okay.

MR. PORTUESI:  That is the date we use.

THE COURT:  Okay. Very good.  We don't have to amend the Information.  Okay.  The Information is correct.

He has acknowledged the convictions, the Habitual 4th.

What would you like to say on your clien'ts

behalf?

MR. REDSTONE:  Well, your honor, I don't want to try the case again.  The Court heard the case.  I would like to remind the Court that this is a case where the complainant testified to an argument going on on a floor where it could have been heard by a lot of people.  There is also a panic button in the cell that was never hit.  There is something not right about this case.

Judge, I would ask the Court to take that into consideration in imposing sentence.

THE COURT:  Uh huh.

MR. REDSTONE:  The guidelines are ~~three to~~ eight.

Because it is on the Habitual, whatever the minimum the Court imposes, my client would serve all of it and this is going to be consecutive on each sentence.

If the Court then look at the equities of the case and what effect of the sentence would be, I think it would be reasonable to go under these guidelines.

I think a sentence in the order of two as a minimum rather than three would be more appropriate.

THE COURT:  Anything you want to say,

Mr. Caulton, before I impose sentence?

MR. CAULTON:  Yes.  First of all, Judge, I know, you know, like my attorney says, you know, Mr. Doan, why I never took the stand was on advice of my attorney, right?  Then, you know, like I was telling him back there, you know, the case was tried like I tried to rape this man as a female.  This was a male.  You know, they found no torn ligaments or nothing torn, what they call, it, tissue, no tissue in the rectum area.  Mr. Doan lied. The Preliminary Exam clearly stated he said when he woke up his rectum was bleeding.  He jumped up in the bed, pulled up his underwear.  In this case they never found no type of lubrication.  They found no blood.  They found nothing.

I didn't do anything to him, but he -- if he is in the courtroom, you know, he knows why he did it, you know, it was a bunch of us in  the jail.  I don't know why he did what he did. The only way I can bring it up is on appeal.  You know, I didn't steal from him.  He know why I was locked up and then the original statement that he made to Mr. Portuesi he claimshe gave the officer a note.

THE COURT:  Uh huh.

MR. CAULTON:  He is claiming something

8

1   happened to him and I can't see that.  It is a lie, you

2   know.  To me it is a contradictory statement.

3                    THE COURT:  A lie is a lie.

4                    MR. CAULTON: You know --

5                    THE COURT: We have got to talk one at

6   a time.

7                    MR. CAULTON:  If you read all the

8   statements that Mr. Doan made, it will tell you I am telling

9   no lie.

10                   On the original statement, that is what

11  I looked up four and a half months.  I am in prison then

12  they come and tell me I am charged with CSC in the First

13  Degree.

14                   THE COURT:  Okay. Is the victim here?

15                   MR. PORTUESI:  No, Judge, I haven't

16  heard anything from him.

17                   THE COURT:  I notice in the pre-sen-

18  tence report they spelled your name wrong.  It should

19  be C-a-u-l-t⁰o-n. and not c-o-u.  You will have to correct

20  the pre-sentence report.  This should not go up there like

21  that.

22                   What is your out date?  You don't have

23  an out date for CSC?

24                   MR. CAULTON:  Twenty to 40 and then

25  they have --

THE COURT: Then you have got this trial and a tail on it.

MR. CAULTON:  The first parole date is 2011.

THE COURT: 2011?

MR. CAULTON: 2011 is what I meant to say.

THE COURT:  Okay.  Well, Mr. Caulton, this is a case that was tried by a jury who listened to the testimony and listened to the cross examination.  They were able to hear the inferences and they heard the testimony of this youngman and all 12 people found you guilty.

I listened to the testimony.  I am convinced that something went on in that cell.  He said there was a struggle and he was dazed and there was some evidence that there was some staining in the under wear.

Your attorney told the jury, and I am going to use his words, he told them those were skid marks.

The jury apparently believed otherwise. There was physical evidence from which a jury could make their findings here and it is not my job to second guess them.

1       Now, because of the consecutive sent-

2 encing, nature of the consecutive sentencing, the nature

3 of this offense and the fact that this is -- you have got

4 at least four other felony convictions, this is the fifth

5 felony conviction and the purpose of the Habitual fourth

6 sentencing is to take factors of things like repetitive crim-

7 inal behavior and keeping that in mind and I recognize

8 I have to proportionalize the sentencing and keeping in

9 mind your life expectancy, which is what in this case?

10 I guess I don't have to be worried about whether the

11 sentence I impose -- I am not going to impose a sentence

12 beyond his life expectancy, but I have to proportionalize

13 it in taking into consideration People vs. Coles, which

14 tells me about disciplining a wrongdoer, protection of

15 society, potential for reformation and deterrence of others,,

16 and I know a little bit about your victim, too because

17 that fellow was on probation before me and he was brought

18 before me as a probation violator.

19       That doesn't make him any lesser of a

20 person.  By that I mean he still is entitled to his rights

21 and he is entitled not to have these type of acts performed

22 on him, but taking all of these factors into considerat-

23 ion, as well as the guidelines for the underlying offense,

24 it is the sentence of the Court that the defendant be

25 committed to the Michigan Department of Corrections to serve

a minimum term of not less than  36months and not more
than 240 months.

You areentitled to no time for credit
on this.

Your sentence is to be consecutive to
the sentence you are currently serving.

To put it another way, the -- to complete
the record, the sentence is consecutive to the sentence
that you are serving for Criminal Sexual conduct in the
first degree which was the matter you are -- in the sen-
tence for at the time this sentence occurred which result-
ed in the conviction, subject to Public Act 276 of 1984
which requires you to register under the Act and must
provide notification in person to any local law enforce-
ment agency, sheriff's department or state police within
10 days of any address change and must provide a completed
copy of the Michigan Sex Offender Act to field agents which
I assume will be your parole officer within 10 days of any
address change.

If I haven't already said it, $60.00
for the Crime Victim's right Service Fund.

You areentitled to -- strike that.  The
reason for the sentence has been stated on the record.

The sentence within the guidelines of

the underlying offense and the sentence of the Habitual
Fourth Offender.

You are entitled as a matter of con-
stitutional right to file an application for appellate
review of your conviction.  If you are financially unable
to hire an attorney to perfect the appeal, I will appoint
a lawyer for you.  Your request for an attorney must be
filed within 42 days.

The record should indicate the the
defendant is now signing the appellate rights form and
a copy has been handed to him.

Okay.  Mr. Caulton, good like to you.

(Hearing concluded)

EXHIBIT – B

**Michigan Department of Corrections**
**Presentence Investigation**

CFJ-284

Rev. 10/03

### Agent's Description of the Offense

The following information was garnered from the Romulus Police Department Investigator's Report dated 07/19/11:

On 07/19/11, Romulus Police interviewed Vella Crawford, the mother of Camoreyia Crawford, who was sexually assaulted by a family member during a family reunion at the Hilton Gardens Hotel on 07/09/11. The mother of the victim notified Romulus Police that her 15 year old daughter was sexually assaulted by the defendant, who engaged in sexual penetration, to wit vaginally with her daughter, Camoreyia Crawford. The mother only knew the suspect as Uncle Red, about 60 years old. The mother stated that Uncle Red is related by marriage to her oldest daughter, Terrelle's aunt, whose name is Jackie Long. Through further investigation, it was learned that Camoreyia Crawford reported to police that she went up to Uncle Red's room #230 at the hotel to obtain plates and napkins for pizza. When she entered the room, the defendant grabbed her wrist and threw her onto the bed. He covered her mouth with his hand and told her "don't tell no one because I would get in big trouble and you would get in trouble". He pulled her pants down and underwear down and penetrated her with his penis. He was on top of her for about three minutes. When he was done, she pulled her clothes up and left the room. The victim then also went back to her room, #506. When the victim went to the bathroom, she saw blood on her underwear and in the toilet. She did not tell anyone what had happened at that time. The mother of the victim was having a conversation with her daughter about being able to talk to her at anytime. At that time, the daughter got a strange look on her face and with some coaxing, told her mother what had happened that evening at the hotel. The mother then took her daughter for a physical examination at Children's Hospital in Detroit, MI, where she was advised to call Romulus Police Department with any further information. While at the hospital, the physical examination at Children's Hospital in Detroit found nothing unusual and it was reported that her hymen was intact. Police also did an interview through Kid's Talk by forensic interviewer, Devita Pace. During the interview, the victim stated that she was at her sister, Sharelle's father's family reunion which took place over a three day weekend, July 8th through July 10th. The victim stated that on the third day into the family reunion, she, along with her sister, Sharelle, brother and cousins, were in a hotel room #506 getting ready to eat pizza before and asked by a cousin and go down to her Aunt Jackie's hotel room. She was asked to get paper plates and napkins for the pizza. The victim stated when she got to her Aunt Jackie's room, #230, upon knocking on the door, she was unaware that her unaware that her Aunt Jackie wasn't in the room. The victim then stated that Uncle Red opened the door, at which time, she noticed that the room was dark, with the exception of the light from the TV being on. The victim stated that she also noted that her sister's great-grandmother, Violet, who has alhemizhers, was asleep in the other bed closer to the entrance door. The victim stated after entering the room to get the paper plates and napkins, Uncle Red grabbed her arms from behind and threw her on the bed away from the entrance door. The victim stated that Uncle Red held both her arms together over her head with one hand and he used the other hand to cover her mouth, during which time, he sat on her stomach . The victim states that he tried to push him off and was unable to do so, due to his weight. The victim stated Uncle Red began to pull her pants down first, then her panties, before he put his penis inside her vagina, causing pain in the vaginal area. The victim stated the entire incident lasted for about 6 to 10 minutes. The victim stated that Uncle Red stopped for unknown reasons, and when he got off her, she noticed that he never took off his underwear or t-shirt and think he used the opening in the front of his boxers/briefs to pull his penis through when he pentrated her. The victim stated as Uncle Red got up, he rubbed his fingers over

## Michigan Department of Corrections
## Presentence Investigation

CFJ-284

Rev. 10/03

her vagina and said "don't tell no one because I will get into big trouble and you will get in trouble". The victim stated she pulled her panties and pants up and Uncle Red handed her the paper plates and napkins. Then she left the room and went back up to room #506 with her sisters, brothers and cousins. The victim stated when she arrived to the room, she put the paper plates and napkins down and went directly to the restroom. The victim also stated that during this interview, that when she used the restroom, she noticed blood dripping in the toilet, and also noticed a small amount of blood in the lining of her panties during which time, she washed the panties.

The victim stated she wanted to tell someone what happened but was ashamed, afraid and shocked. The victim stated she saw the defendant on the last day of the reunion, but he didn't say much to her but "hi", and talked to her and her brother about going fishing on the boat. The victim stated about a week or two later, she told her mother what had happened and the day after speaking with her mother about the incident, she went to Children's Hospital for a check up.

On 08/17/11, a warrant was signed for the defendant charging him with Criminal Sexual Conduct, 1st Degree, Criminal Sexual Conduct, 3rd Degree, Criminal Sexual Conduct, 2nd Degree.  On January 10, 2012, the defendant was found guilty by jury on the charge of Criminal Sexual Conduct, 3rd Degree.  Counts I and II were dismissed.  Sentencing is scheduled for 02/02/12.

## Consecutive Sentences

No statement was received from the Assistant Prosecuting Attorney in regards to consecutive sentencing on this instant offense.

## Victim's Impact Statement

On 01/26/12, this agent spoke with the mother of the defendant, who stated that she will be reading a statement at sentencing on 02/02/12.

## Defendant's Description of the Offense

The defendant gave no description of this instant offense.

## Criminal Justice

**Juvenile History:**

The defendant is overage for a juvenile criminal history check.

**Adult History:**

**NO. 1 OF 9**

EXHIBIT - C

EXHIBIT B-a

## Macomb County Sheriff Department

Citizen Complaint

(Details by Complainant)

Complaint # 62880

Date: 11-15-95   Time: 3:20

Superior receiving complaint must complete Incident Report MC-21

| | |
|---|---|
| Complainant Name: MARK AnThony Down | Date of Birth: 9-26-7 |
| Address: 38066 Pardo ClinTon Twpm 48038 | Telephone # 228-542 |
| Incident Date: 11-14-95 | Time: 3:20 |
| Incident Location: 6D4 | |

### False Police Report

Any person who shall willfully and knowingly make to any member of the Macomb County Sheriff Department, a statement verbal or in writing, of the commission of any crime knowing the same to be false, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 90 days or by a fine of not more than $100.00; contrary to MCL 750.411a; MSA 28.643(1), (750.411a-1).

On 11-14-95 in cell 6D4 iT was
afTer Lock down me and Ben were
Playing cards and Ben Tried To kill
me and I pushed him away and
he grabed me and Tried To kiss
me more so I kicked he hit me
closed Fisted in The Face and Then
choaked me Till I passed out
and When I came To I was
shacking so bad I cildn't had
a cigaRRie and my pants are
under ware wet so Then agin I
kicked him, and I Jumped in
my bed, and he sed Fuck you
I am going To sleep

Mark Down    11-15-95

MICHIGAN DEPARTMENT OF CORRECTIONS

# NOTICE OF INTENT TO CONDUCT AN ADMINISTRATIVE HEARING

CSJ-282   Rev. 1/86

| INSTITUTION<br>TCF | RESIDENT'S NAME<br>CAULTON | | NUMBER<br>246805 | DATE<br>8-9-96 |
|---|---|---|---|---|
| REPORTING STAFF MEMBER'S SIGNATURE<br>Sgt M. McDonald   #13468   SGT M. MCDONALD | | | BLOCK/UNIT NUMBER<br>ESSEX B | CELL/ROOM NUMBER<br>EB-34 |

NATURE OF HEARING
HOMOSEXUAL PREDATOR LABEL

## REASON FOR HEARING

TCF RECIEVED INFORMATION ON 8-5-96 FROM THE MACOMB COUNTY JAIL INDICATING THAT
CAULTON 246805 RECIEVED A MISCONDUCT (WITH A GUILTY FINDING) FOR ATTEMPTING TO
SEXUALLY ASSAULT ANOTHER INMATE ON OR ABOUT 11-15-95. PRISONER CAULTON IS FACING
CRIMINAL PROSECUTION FOR THIS OFFENSE.

PD 05.01.140 PAGE 7 of 10, SECTION KK. "IF FACILITY STAFF BELIEVE THAT THE PRISONER
IS A HOMOSEXUAL PREDATOR, THE PRISONER SHALL BE GIVEN THE OPPORTUNITY FOR A HEARING
AS PROVIDED IN ADMINISTRATIVE RULE 791.3310, WHICH SHALL BE CONDUCTED BY THE SECURITY
CLASSIFICATION COMMITTEE."

SEE ATTACHED JAIL MAJOR RULE VIOLATION REPORT.

## PROPOSED DISPOSITION

CAULTON'S PLACEMENT CLASSIFICATION SHOULD BE REVIEWED BY THE SECURITY CLASSIFICATION
COMMITTEE TO DETERMINE IF CAULTON SHOULD HAVE A HOMOSEXUAL PREDATOR LABEL AND
BE PLACED IN A LEVEL IV OR HIGHER FACILITY WITH A SINGLE BUNK CELL AS DEFINED
IN PD 05.01.140 PAGE 7 OF 10, SECTION II. "A PRISONER WHO IS CURRENTLY LABELED
AS A HOMOSEXUAL PREDATOR SHALL NOT BE PLACED IN SECURITY LEVEL I, II, OR III FACILITY
NOR SHALL THE PRISONER BE PLACED IN A DOUBLE-BUNKED CELL OR ROOM."

reviewed on 8/8/96
3:05 P.M.
Ten. Allen

| I waive the 24 hour notification of hearing requirements. | RESIDENT'S SIGNATURE |
|---|---|
| RELEVANT DOCUMENTS REQUESTED | STAFF ASSISTANCE REQUESTED<br>☒ YES   ☐ NO |
| I have received a copy of this report. My signature does not necessarily mean that I agree with the report. | RESIDENT'S SIGNATURE<br>Benjamin Caulton |
| I understand the proposed disposition stated above and waive the right to a hearing. | RESIDENT'S SIGNATURE |

UNITED STATES POSTAL SERVICE

$ 03.040

02 1M
000427 5413
AUG 26 2016
MAILED FROM ZIP CODE 48848



# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| Case No. 16-13163 | Judge: Sean F. Cox | Magistrate Judge: Mona K. Majzoub |

| | |
|---|---|
| **Name of 1st Listed Plaintiff/Petitioner:**<br><br>Benjamin Caulton, et al. | **Name of 1st Listed Defendant/Respondent:**<br><br>Rick Snyder |
| **Inmate Number:** 246805 | **Additional Information:** |
| **Plaintiff/Petitioner's Attorney and Address Information:** | |
| **Correctional Facility:**<br><br>Bellamy Creek Correctional Facility<br><br>1727 West Bluewater Highway<br>Ionia, MI 48846<br>IONIA COUNTY | |

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   - ☐ Yes   ☒ No
   - ➤ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   - ☐ Yes   ☒ No
   - ➤ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____

MIED (Rev. 07/06)  Civil Cover Sheet for Prisoner Cases